IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>JONATHAN TORRES-ROJAS [2],<br><br>Defendant. | CRIMINAL NO. 18-211 (CVR) |

**OPINION AND ORDER**

**INTRODUCTION**

On March 26, 2018, a grand jury returned an Indictment against Defendant Jonathan Torres-Rojas ("Torres-Rojas" or "Defendant") on charges of conspiracy to commit interference with commerce by robbery (18 U.S.C. Sec. 1951); interference with commerce by robbery (18 U.S.C. Secs. 1951 and 2); carjacking resulting in death (18 U.S.C. Secs. 2119 (3) and 2); and use and carry of a firearm during a crime of violence causing murder (18 U.S.C. Secs. 924(c)(1)(A), 924(j)(1) and 2). (Docket No. 3).

The facts of this case stem from a robbery and carjacking resulting in the death of Mr. José Medina ("Mr. Medina"), owner of El Rejón del Gallo, a small business located in Orocovis, Puerto Rico. On June 12, 2015, as Mr. Medina was closing the business for the night along with his wife, assailants robbed him from cash and a 2001 gray Toyota Sequoia vehicle. Mr. Medina was shot by one of the assailants and died at the scene. The assailants then fled the scene in Mr. Medina's vehicle.

On August 19, 2024, the jury trial began and lasted seven days. On August 23, 2024, after the close of the government's case-in-chief, Torres-Rojas made an oral motion

under Fed.R.Crim.P. 29(a) which the Court denied. (Docket No. 308). On August 26, 2024, after Defendant presented his sole witness, he renewed his motion under Fed.R.Crim.P. 29 which was again denied. (Docket No. 318). The next day, the jury found Torres-Rojas guilty of Count One (conspiracy to commit interference with commerce by robbery in violation of 18 U.S.C. Sec. 1951) and Count Two (interference with commerce by robbery in violation of 18 U.S.C. Secs. 1951 and 2). Torres-Rojas was acquitted of Count 3 (carjacking resulting in death in violation of 18 U.S.C. Secs. 2119 (3) and 2) and Count 4 (use and carry of a firearm during a crime of violence causing murder in violation of 18 U.S.C. Secs. 924(c)(1)(A), 924(j)(1) and 2). (Docket No. 328).

Before the Court now is Torres-Rojas' post-verdict Motion for Judgment of Acquittal under Fed.R.Crim.P. 29(c)(1) which was filed on September 24, 2024, in which he makes a general motion for judgment of acquittal to preserve for appeal purposes all challenges to the sufficiency of the evidence. In addition, Torres-Rojas particularly posits that the evidence presented by the government was insufficient to sustain the conviction as to Counts One and Two. As to Count One, he contends the government presented insufficient evidence to prove beyond a reasonable doubt, among other things, that he was part of a conspiracy to rob El Rejón del Gallo and that he intended to join a conspiracy to affect commerce. As to Count Two, he avers the government's evidence failed to establish that (1) he participated in the robbery, (2) assets from El Rejón del Gallo were taken during the robbery, and (3) the robbery affected interstate commerce. (Docket No. 332).

On October 24, 2024, the government filed its Response to Defendant's Motion for

Judgment of Acquittal moving the Court to deny the motion because the evidence presented at trial, when viewed in the light most favorable to the government, is more than sufficient to support the jury's findings of guilty as to both Counts One and Two. (Docket No. 336).

After a careful review of the jury trial transcripts and the evidence on record, Defendant's Motion for Judgment of Acquittal (Docket No. 332) is DENIED. As summarized below, the government presented sufficient evidence, physical and testimonial, to prove all the elements of the offense charged in Counts One and Two. The physical evidence corroborated Torres-Rojas' confession and tied him to this case.

## LEGAL STANDARD

Rule 29 of the Fed.R.Crim.P. permits a court to "set aside the verdict and enter an acquittal." Fed. R. Crim. P. 29(c)(2). "A defendant may move for a judgment of acquittal, or renew such a motion, within 14 days after a guilty verdict or after the court discharges the jury, whichever is later." *Id.*, R. 29(c)(1).[1] "A defendant is not required to move for a judgment of acquittal before the court submits the case to the jury as a prerequisite for making such a motion after jury discharge." *Id.*, R. 29(c)(3).

In reviewing a Rule 29 motion, a court considers the evidence "in the light most favorable to the government." United States v. Gómez-Encarnación, 885 F.3d 52, 55 (1st Cir. 2018). "The verdict must stand unless the evidence is so scant that a rational factfinder could not conclude that the government proved all the essential elements of the

---

[1] Defendant was granted until September 24, 2024, to file post-trial motions. (Docket No. 328).

charged crime beyond a reasonable doubt." United States v. Fernández-Jorge, 894 F.3d 36, 42 (1st Cir. 2018) (cleaned up).

Thus, the analysis under Rule 29 "begin[s] by considering whether any rational fact-finder could have concluded beyond a reasonable doubt that" the defendant committed each element of the offense for which he was convicted. *Id.*, p. 3. In doing so, the court "take[s] into account all evidence, both direct and circumstantial, and resolve[s] evidentiary conflicts and credibility disputes in favor of the jury's verdict." United States v. Valerio, 676 F.3d 237, 244 (1st Cir. 2012). The Court will give "equal weight to direct and circumstantial evidence," see United States v. Appolon, 715 F.3d 362, 367 (1st Cir. 2013), and refrain from "assess[ing] the credibility of witnesses, as that is a role reserved for the jury." United States v. Lipscomb, 539 F.3d 32, 40 (1st Cir. 2008). If, however, evidentiary conflicts, credibility questions or competing inferences (two or more of which are plausible) arise, the trial judge must resolve them in the prosecution's favor. United States v. Olbres, 61 F.3d 967, 970 (1st Cir. 1995). In essence, "[t]he court's duty is to make sure the evidence is sufficient to support the conviction." United States v. Guzmán-Montañez, 756 F.3d 1, 10 (1st Cir. 2014). Therefore, "[t]he government need not succeed in eliminating every possible theory consistent with the defendant's innocence." United States v. Troy, 583 F.3d 20, 24 (1st Cir. 2009). "And circumstantial evidence alone may be sufficient to provide a basis for conviction." United States v. Rodríguez-Durán, 507 F.3d 749, 758 (1st Cir. 2007).

Consequently, "[d]efendants challenging convictions for insufficiency of evidence

face an uphill battle on appeal." Lipscomb, 539 F.3d 32, 40 (quoting United States v. O'Shea, 426 F.3d 475, 479 (1st Cir. 2005)); United States v. Pérez-Meléndez, 599 F.3d 31, 40 (1st Cir. 2010). "[A] guilty verdict may rest on reasonable factual inferences drawn from direct or circumstantial evidence, but not on insupportable or overly speculative evidentiary interpretations.... And, it is within the jury's purview to evaluate competing factual inferences and theories that are supported by the evidentiary presentation." United States v. Ridolfi, 768 F.3d 57, 61 (1st Cir. 2014) (citations omitted).

Ultimately, the court need only determine that the conviction "finds support in a plausible rendition of the record." United States v. Shaw, 670 F.3d 360, 362 (1st Cir. 2012). "Reversal is warranted only where no rational factfinder could have concluded that the evidence presented at trial, together with all reasonable inferences, established each element of the crime beyond a reasonable doubt." United States v. McDonough, 727 F.3d 143, 152 (1st Cir. 2013) (cleaned up).

## ANALYSIS

**A. Count Two: Interference with Commerce by Robbery (18 U.S.C. Secs. 1951 and 2).**

To convict Torres-Rojas of obstructing, delaying, or affecting commerce by committing robbery (18 U.S.C. Sec. 1951), the government had to prove each of the following elements beyond a reasonable doubt: 1) that Torres-Rojas knowingly and willfully obtained property from El Rejón del Gallo; 2) that Torres-Rojas did so by means

of robbery; and 3) that the robbery affected interstate commerce.[2]

Defendant contends the government failed to meet each of these elements. First, the evidence failed to establish beyond a reasonable doubt that he participated in the robbery because there was no eyewitness' identification testimony, no physical evidence, no DNA, or fingerprint evidence connecting him to the crime; and the only link to the crime was his unrecorded confession which was unreliable and inconsistent with two of the testimonies presented at trial. (Docket No. 332, pp. 3-6). Second, no assets were taken from El Rejón del Gallo. (*Id*., pp. 6-7). Third, the robbery did not affect interstate commerce. (*Id*., pp. 7-9).

Upon a careful review, the Court finds the government proved beyond a reasonable doubt all the elements of the offense charged in Count Two.

### 1. Torres-Rojas' knowingly and willfully obtained property from El Rejón del Gallo and did so by means of robbery.

The government proved beyond a reasonable doubt that Torres-Rojas' knowingly and willfully obtained property from El Rejón del Gallo and did so by means of robbery.

Elvin Rojas-Rojas ("Rojas-Rojas") testified on behalf of the government that he had seen before in Orocovis the individual, that he did not know the name, whose photo was shown to him during the trial and who was previously identified during the trial as Defendant Torres-Rojas. (Exhibit 54, photo 5). Rojas-Rojas testified that the individual he did not know the name (Torres-Rojas) was seated in the back of the Suzuki wine vehicle

---

[2] See Jury Instructions (Docket No. 325, pp. 19-20) based on Instruction 4.18.1951, Pattern Criminal Jury Instructions for the District Courts of the First Circuit, District of Maine, February 6, 2024 (herein after "Pattern Jury Instructions").

Case 3:18-cr-00211-CVR   Document 337   Filed 10/29/24   Page 7 of 20

United States of America v. Jonathan Torres-Rojas [2]
Opinion and Order
Crim. No. 18-211 (CVR)
Page 7

when Malenquito went to his house the night of the robbery (June 12, 2015) with two other individuals (Pito and Ezequiel) to invite him to participate in the robbery of El Rejón del Gallo. Malenquito and Pito had weapons and they were all dressed in black clothes. After they left Rojas-Rojas' house, Rojas-Rojas heard some detonations. (Docket No. 311, pp. 8-12, 20-21, 42, 44-47, 55-56, and 62-65). Rojas-Rojas also testified that, the day after the robbery of El Rejón del Gallo, he saw the individual he did not know the name (Torres-Rojas) with Malenquito, Pito and Ezequiel at Quiles Bakery where they showed him a gun, drugs, and money. (*Id.*, pp. 61-65).

In addition to the testimony of Rojas-Rojas, the government introduced into evidence the confession of Defendant Torres-Rojas with the testimony of FBI SA José Alvarado ("SA Alvarado") who interviewed Defendant twice. (Docket No. 313, pp. 48-50). SA Alvarado identified Torres-Rojas in open court and recognized him in a photograph where he looked like the day of the robbery. (*Id.*, pp. 50-53 and Exhibit 64). SA Alvarado testified Defendant was interviewed in a room at the Aibonito Police precinct where he arrived accompanied by his father. (*Id.*, pp. 53-54). During the interview, Defendant was calm, was not detained, was not under arrest, was not handcuffed and was free to leave. (*Id.*, pp. 56-57, 62 and 69). On December 22, 20216, date of the first interview, Defendant was read his Miranda rights, he initialed every block in the form and signed the form. (*Id.*, pp. 57-60 and Exhibits 7 and 7T). After Defendant signed the Miranda rights form, he decided to speak to SA Alvarado about the events of June 12, 2015, at El Rejón del Gallo. (*Id.*, p. 60).

In essence, SA Alvarado testified that Torres-Rojas was at a local bar when Juan Negrón-Rodríguez aka Ratón ("Ratón") and two other individuals he did not know arrived in a vehicle and invited him to do a stick up, or commit a robbery. Torres-Rojas agreed and got in the vehicle with them. On the way to El Rejón del Gallo, they changed clothes and Ratón provided Torres-Rojas with a nine-millimeter pistol. Torres-Rojas and the others got out of the car and hid behind some trailers near El Rejón del Gallo. They waited for about one hour until the business closed. Then, Ratón made the first move towards the business, a second individual followed, and Torres-Rojas followed the second individual. As they were approaching the entrance, Torres-Rojas saw Ratón shot twice Mr. Medina, the owner of El Rejón del Gallo. Torres-Rojas then got into the vehicle of the victim in the back seat of the driver's side with Ratón and the other individual and they left the scene. They drove to an uninhabited area nearby where they got off the victim's vehicle. Torres-Rojas asked Ratón why he had shot the victim and he said to shut up and forget about it. Ratón took out the battery of the victim's vehicle, they split the money and parted ways. (*Id.*, pp. 60-62). Defendant spent the money he received from the robbery on some parts for a Banshee that he had. During the interview, SA Alvarado took notes and he read the notes and provided them to Torres-Rojas for him to review them. Torres-Rojas reviewed the notes and signed them. (*Id.*, p. 63-64). The notes were admitted as Exhibits 8 and 8T and were read to the jury. (*Id.*, pp. 64-68).

SA Alvarado testified that the conversation with Torres-Rojas on December 22, 2016, was not recorded because the location where the interview took place did not have

Case 3:18-cr-00211-CVR   Document 337   Filed 10/29/24   Page 9 of 20

United States of America v. Jonathan Torres-Rojas [2]
Opinion and Order
Crim. No. 18-211 (CVR)
Page 9

suitable equipment to record it. SA Alvarado went to the Aibonito Police precinct to provide support during the execution of a search warrant of Torres-Rojas' DNA, and he was not expecting to speak to Torres-Rojas. SA Alvarado explained that the FBI records *custodial* interrogations. Since Torres-Rojas was not in custody nor under arrest, the FBI policy states that recordings are optional and not mandated. (*Id.*, p. 69-70).

SA Alvarado testified that Torres-Rojas was interviewed for a second time on December 27, 2016, because the prosecutor wanted additional information from Torres-Rojas. (*Id.*, pp. 71-72). Task Force agents Cristobal Rodríguez and Carlos Cabán picked up Torres-Rojas at his residence and brought him to the FBI's Ponce office where he was interviewed. Defendant was not under arrest, was not handcuffed, was not detained and was free to leave. (*Id.*, pp. 72-73). SA Alvarado asked Defendant whether anything was said while they were watching the business from behind the trailers and Defendant answered that he only spoke when they took turns as they waited for the business to close. Torres-Rojas explained the car that dropped them at the scene of the robbery had a cardboard license plate. (*Id.*, p. 73). Prior to this second interview, Torres-Rojas was provided with a Miranda rights form that was explained to him, then he initialed and signed the same. (*Id.*, pp. 74-76 and Exhibits 9 and 9T). SA Alvarado took notes during this interview, showed them to Torres-Rojas for him to review them and then Torres-Rojas initialed and signed the notes. (*Id.*, pp. 76-77). The notes were admitted into evidence and read to the jury. (*Id.*, pp. 78-79 and Exhibits 10 and 10T).

Similarly, Puerto Rico Police Sergeant Arnold García-Ortiz ("Sgt. García-Ortiz")

testified that Defendant admitted his participation in the conspiracy and robbery of El Rejón del Gallo.  Sgt. García-Ortiz testified as to his participation in the investigation of the robbery at El Rejón del Gallo and his request for a search warrant for a buccal swab of Defendant Torres-Rojas on December 21, 2016.  (Docket No. 294, pp. 29-31, 44-48 and Exhibits 40 and 40T).  On December 22, 2026, Sgt. García-Ortiz testified that he executed the search warrant on Defendant Torres-Rojas at the Aibonito Headquarter.  Sgt. García-Ortiz identified Defendant in open court and as the individual in Exhibit 64.  (*Id.*, pp. 48-51).  Sgt. García-Ortiz gave Defendant the Miranda warnings and explained them to him in the presence of his father and then performed the buccal swab to collect the DNA sample.  (*Id.*, pp. 52-55, 57-58 and 61, and Exhibits 41 and 41T).  Then, after the interview of SA Alvarado of Defendant concluded, Sgt. García-Ortiz interviewed Defendant.  Defendant was not under arrest, was not detained, was not in handcuffs and was free to leave.  (*Id.*, pp. 54-57).  Sgt. García-Ortiz testified that Defendant admitted his participation in the robbery of El Rejón del Gallo, as contained in Defendant's declaration at Exhibits 42 and 42T, which was read to the jury.  Defendant indicated they split the money from the robbery which was $1,100.00 and each one got $300.00.  (*Id.*, pp. 62-77).

Contrary to Defendant's assertions, based on the evidence presented at trial and after assessing credibility, the jury could have found Defendant's confessions on December 22 and 27, 2016 about his participation in the robbery to be reliable, even though they were not recorded.  First, Rojas-Rojas testified as to the presence of an

individual that he did not know the name (later identified as Torres-Rojas) in the vehicle when he went with others the night of the robbery to invite him to participate, which is consonant with Torres-Rojas' confessions as to events prior to the robbery. Second, the confessions were provided by Torres-Rojas after he was given the Miranda rights forms and decided to speak to the law enforcement agents after knowingly and willingly waiving his rights. Third, Defendant's confessions were corroborated by physical evidence presented during the trial which included the following:

1. Defendant admitted that they hid behind some trailers at El Rejón del Gallo. There were in fact various trailers in the property at the time of the events. (Docket No. 297, pp. 16-17; Docket No. 319, pp. 113-114, 119-121; and Exhibits 1, 2, 48, 49, 50, 51, and 52).

2. Defendant admitted that one of his co-conspirator shot Mr. Medina, the owner of the El Rejón del Gallo.  Mr. Medina was killed during the robbery as testified by his wife and the autopsy confirmed that he died of a gunshot wound as testified by Dr. Carlos Chavez. (Docket No. 319, pp. 65-67, 69-73, 115-116, 118-119; Exhibits 5, 43, 44, 45, 46 and 47).

3. Defendant admitted that Ratón wielded a revolver during the robbery and carjacking. Several witness and expert witnesses testified about the projectiles consistent with the use of a revolver were found in the crime scene and shell casings consistent with a revolver caliber were found near where the Toyota Sequoia vehicle was recovered. (Docket No. 297, pp. 18-19; Docket No. 312, pp. 14-22 and Exhibits 3, 4, 6, and 59; Docket

No. 319, pp. 81-85 and 90; Exhibits 26 and 27; Docket No. 312, pp. 28-42 and Exhibits 18-32 and 60).

4. Defendant admitted that Ratón drove the carjacked Toyota Sequoia vehicle to the spot where it was left after the robbery and Ratón took out the battery of the vehicle. DNA consistent with Ratón was found in the steering wheel of the stolen Toyota Sequoia and the battery of the Toyota Sequoia was found removed from the vehicle a few feet away. (Docket No. 319, pp. 19-26; Docket No. 312, pp. 35-36 and Exhibits 20 and 29).

In addition, María Ortiz-Meléndez ("Mrs. Ortiz-Meléndez") testified at trial as the widower of Mr. Medina, the victim in this case. She testified how Mr. Medina was robbed and killed on June 12, 2015, in her presence, at El Rejón del Gallo. She testified that, when she arrived at the business her husband was working the accounts of what the customers bought that night as he usually did every night before closing the business. She indicated the clients paid in cash which was the only form of payment, and her husband received the money. (Docket No. 319, pp. 105-113). Once outside the business, she saw the silhouettes of the assailants and described them as armed, they walked from behind the trailers to the business, the assailants demanded money from Mr. Medina, and pulled money from his pocket. The money was a reserve Mr. Medina always had in his pocket in case they were robbed. (*Id.*, pp. 114-119). See Exhibits 48, 49, 49-A, 50, 51, 52, 53, 55, 56, 57, 62 and 63.

Angel Rivas ("Mr. Rivas"), a regular patron at El Rejón del Gallo, also testified during the trial that he saw four men coming out of the trailers at El Rejón del Gallo and

grabbing the victim's wife by the neck on the night of the robbery. One of the men shot to the air and announced the hold-up. Then, Mr. Rivas witnessed how Mr. Medina was shot in the chest by one of the men. Mr. Rivas saw as the perpetrators took the money from Mr. Medina, which he identified as profits that Mr. Medina had, and the keys of Mr. Medina's vehicle (Toyota Sequoia). Mr. Rivas also saw when the perpetrators left in the victim's vehicle. (Docket No. 313, pp. 12-26; Exhibits 1, 2 and 5).

The government bore the burden of proving that property of El Rejón del Gallo was taken during the robbery with direct or circumstantial evidence establishing or permitting a reasonable inference beyond a reasonable doubt, that the money taken from the victim was from the business. The Court observed the trial first-hand and has conducted a careful review of the parties' submissions, the transcribed testimonies of every trial witness, and all admitted exhibits. Giving due deference to the jury's verdict and applying the prosecution-friendly standard governing Rule 29 challenges, the Court finds that the evidence can support a reasonable inference by the jury that the money taken from the victim by the assailants during the robbery was money from the business based on the testimonies above summarized and Defendant's confessions.[3]

Moreover, even assuming for the sake of the argument that the jury found that the money the assailants took from Mr. Medina was not from the business but was personal

---

[3] When assessing Rule 29 challenges in criminal cases, the Court of Appeals for the First Circuit has "remarked, time and again, that factfinders may draw reasonable inferences from the evidence based on shared perceptions and understandings of the habits, practices, and inclinations of human beings. Thus, jurors are neither required to divorce themselves from their common sense nor to abandon the dictates of mature experience." United States v. Ortiz, 966 F.2d 707, 712 (1st Cir. 1992); United States v. Cedeño-Mariano, 971 F.Supp 2d 225 (D. Puerto Rico 2013).

Case 3:18-cr-00211-CVR   Document 337   Filed 10/29/24   Page 14 of 20

United States of America v. Jonathan Torres-Rojas [2]
Opinion and Order
Crim. No. 18-211 (CVR)
Page 14

money of his, Defendant's argument that he should be acquitted because no assets were taken from El Rejón del Gallo also fails.

The Court of Appeals for the First Circuit ("First Circuit") has found that robbery of personal property at a commercial establishment satisfies the jurisdictional element of section 1951 if the robbery causes an interruption to commerce.[4] United States v. Vega-Molina, 407 F.3d 511, 527 (1st Cir. 2005) (holding that the government can satisfy the jurisdictional element of a Hobbs Act violation by showing that "the perpetrators only took money from [the business'] employees, not from the business"). See United States v. Serrano-Delgado, 375 F. Supp. 3d 157, 163-64 (D.P.R. 2019), aff'd, 29 F.4th 16 (1st Cir. 2022) (same).

In sum, even though Defendant is correct in arguing that no DNA or fingerprint evidence connected him to the crime[5], based on the testimonial and physical evidence above summarized, the jury could have found beyond a reasonable doubt that Defendant Torres-Rojas knowingly and willfully obtained property from El Rejón del Gallo and did so by means of robbery.

### 2. The robbery of El Rejón del Gallo affected interstate commerce.

The evidence presented at trial also established beyond a reasonable doubt that the robbery at El Rejón del Gallo affected interstate commerce.

The Hobbs Act prohibits "affect[ing] commerce … by robbery." 18 U.S.C. Sec.

---

[4] This assertion is further developed in the next section.
[5] Tiffany Smith, FBI DNA expert testified that environmental factors could break down or affect quality of DNA such as heat and humidity.  (Docket No. 319, p. 14).

1951(a). The government need only show "a 'realistic probability of a *de minimis* effect on interstate commerce.'" United States v. Boyrie-Laboy, 99 F.4th 39, 44 (1st Cir. 2024); United States v. Tkhilaishvili, 926 F.3d 1, 11 (1st Cir. 2019) (quoting United States v. Capozzi, 486 F.3d 711, 725-26 (1st Cir. 2007)). To meet this burden, the government can rely on "potential future effects." *Id.* (citation omitted). The First Circuit has recognized that, when businesses purchase or sell goods manufactured in another state, such acts establish a sufficient interstate commerce nexus. See United States v. Rivera-Rivera, 555 F.3d 277, 286 (1st Cir. 2009) ("[W]e have held that a business is engaged in interstate commerce where the business purchased products from out-of-state."); Boyrie-Laboy, 99 F.4th at 44 (same); United States v. Brennick, 405 F.3d 96, 100 (1st Cir. 2005) (concluding that there was sufficient effect on interstate commerce where "store manager testified at trial that if the stolen money had not been taken, it would have been reinvested in the purchase of goods manufactured outside the state of New Hampshire").

"[T]he government may demonstrate the robbery affected interstate commerce by demonstrating that (1) the business engaged in interstate commerce, and (2) that the robbery either depleted the assets of the business or resulted in the business's temporary or permanent closure." Rivera-Rivera, 555 F.3d at 286.[6]

---

[6] A business may be engaged in interstate commerce indirectly. As recognized in Rivera-Rivera, 555 F.3d at 289, for example, "if a business purchases its products from an in-state supplier who, in turn, purchases its products from out of state, that indirect link to interstate commerce suffices to establish that the business is engaged in interstate commerce." See United States v. Zeigler, 19 F.3d 486, 491 (10th Cir. 1994) ("[The business] purchased goods from an [in-state] distributor who, in turn purchased the goods it supplied to [the business] from outside the state. This indirect link to interstate commerce is sufficient to establish that [the business] was engaged in interstate commerce."). "The reason why an indirect link may establish the requisite interstate nexus is that a crime that either closes or depletes the assets of a business indirectly engaged in interstate commerce could realistically affect interstate commerce." Rivera-Rivera, 555 F.3d at 289. See United States v. Elias, 285 F.3d 183, 189 (2d Cir. 2002) (rejecting defendant's argument that the government was required to show that some of the products sold by the business were purchased directly from

Mrs. Ortiz-Meléndez testified that imported beers like Coors Light, Budweiser, Heineken, among other beers and hard liquor, and refreshments such as Coca Cola and 7-Up were sold at El Rejón del Gallo along with local fried food at the time of the robbery. (Docket No. 319, pp. 106-107). She also testified that, after the robbery and the passing of her husband, the business remained closed for three to four months during which no money was generated from the business. (*Id.*, pp. 123-124).

Mr. José Medina-Ortiz, the victim's son, confirmed Mrs. Ortiz-Meléndez' testimony, as he testified that beers such as Coors Light, Heineken, Budweiser, Corona, and liquors such as Black Label, Cutty Sark, Palo Viejo, Bacardi and Finlandia were sold at El Rejón del Gallo when the robbery occurred. Also, some auto parts were sold such as bulbs. After Mr. Medina-Ortiz' father was killed the night of the robbery, the business closed for six to eight months. No income was received while the business was closed. (*Id.*, pp. 137-138).

Mr. Arturo Loperena-Nigaglioni, branch manager at V. Suárez Company, testified that said company is a Puerto Rican distributor for the past 65 years. He testified that V. Suárez distributes Coors Light beer which manufactured in Denver, Colorado but its source is from Albany. The product comes from Jacksonville to Puerto Rico. Coors Light has never been manufactured in Puerto Rico. He also testified that Heineken beer is

---

out-of-state suppliers and holding that "a robbery of a local [business] may be said to affect interstate commerce if the robbery impairs the ability of the [business] to acquire-whether from out-of-state or in-state suppliers—goods originating out-of-state"); United States v. Brown, 959 F.2d 63, 68 (6th Cir.1992) ( "Brown attempted to rob a tavern that … purchased goods from local distributors who in turn purchased goods from outside of the state. Had Brown's heist been successful, there is a realistic probability that the depletion of the bar's assets would have affected the amount of its purchases of beer having moved through interstate commerce.").

manufactured in Holland. (Docket No. 319, pp. 131-133).

Based on these testimonies, along with the other testimonies heard during the trial and Defendant's confessions, the jury could have found beyond a reasonable doubt that El Rejón del Gallo was a business engaged in interstate commerce and that no food or beverages could be sold during the robbery or immediately thereafter due to the armed assailants, death of Mr. Medina, and police officers present at the crime scene, and that therefore the robbery had a "realistic probability of a *de minimus* [sic] effect on interstate commerce." United States v. Catalán-Román, 585 F.3d 453, 462 (1st Cir. 2009); Vega-Molina, 407 F.3d at 527 (finding that "[t]he commission of a violent crime in the workplace inevitably will constitute a wrenching, if unquantifiable, blow to morale and productivity," especially when "the robbery and events associated with it caused the company to close its offices the following day"); United States v. Chaplain, 864 F.3d 853, 858 (8th Cir. 2017) ("Where a business is forced to close for a period of time, a court is especially likely to find that the robbery affected interstate commerce."); United States v. Davis, 30 F.3d 613, 615 (5th Cir. 1994) (finding the jurisdictional element of a section 1951 violation satisfied when "robberies caused the interruption of commerce" because of "temporary closure" at the affected establishments). See also, Serrano-Delgado, 375 F. Supp. 3d at 163.

In sum, the evidence presented at trial demonstrated that El Rejón del Gallo was a business engaged in interstate commerce and the robbery had the necessary *de minimis* impact on interstate commerce.

Case 3:18-cr-00211-CVR    Document 337    Filed 10/29/24    Page 18 of 20

United States of America v. Jonathan Torres-Rojas [2]
Opinion and Order
Crim. No. 18-211 (CVR)
Page 18

### B. Count One: Conspiracy to Interfere with Commerce by Robbery (18 U.S.C. Secs. 1951 and 2).

To convict a defendant of a Hobbs Act conspiracy, the government must prove that the defendant willfully joined in an agreement with at least one other person with "an intent to agree and an intent to commit the substantive offense." United States v. Morales-Machuca, 546 F.3d 13, 20 (1st Cir. 2008) (quoting United States v. Palmer, 203 F.3d 55, 63 (1st Cir. 2000)); United States v. Valentini, 944 F.3d 343, 348-49 (1st Cir. 2019); United States v. Rodríguez-Milián, 820 F.3d 26, 31 (1st Cir. 2016); Pattern Jury Instructions Sec. 4.18.371(1). "To act 'willfully' means to act voluntarily and intelligently and with the specific intent that the underlying crime be committed." Pattern Jury Instructions Sec. 4.18.371(1); United States v. Allen, 670 F.3d 12, 17 (1st Cir. 2012). See also, Docket No. 325, pp. 19-21.

The conspiracy does not have to be a formal agreement and the government need not prove that Torres-Rojas was aware of all its details. The government must prove that Defendant Torres-Rojas "knew the essential features and general aims of the venture." Pattern Jury Instructions § 4.18.371(1); United States v. Arruda, 715 F.2d 671, 685 (1st Cir. 1983); United States v. Barnes, 251 F.3d 251, 259 (1st Cir. 2001) (upholding district court's conspiracy instruction that co-conspirators must "share[] a general understanding about the crime"). "The conspiratorial agreement may be tacit or express and may be proved by circumstantial evidence." Rodríguez-Milián, 820 F.3d at 31.

A jury easily could have found beyond a reasonable doubt that Torres-Rojas conspired to rob El Rejón del Gallo. The government's evidence summarized above,

Case 3:18-cr-00211-CVR    Document 337    Filed 10/29/24    Page 19 of 20

United States of America v. Jonathan Torres-Rojas [2]
Opinion and Order
Crim. No. 18-211 (CVR)
Page 19

through the testimony of Rojas-Rojas and Defendant's own admissions, was sufficient to establish beyond a reasonable doubt that Torres-Rojas joined the conspiracy when Malenquito and the others went to his house and invited him to participate during the robbery of El Rejón del Gallo on June 12, 2015, and he agreed to participate in the robbery of said business. Torres-Rojas got inside the vehicle with his co-conspirators, accepted a gun which was provided to him, changed clothes, hid with the others behind the trailers taking turns waiting for the business to close, participated during the robbery, got inside the victim's Toyota Sequoia vehicle, fled the scene, and received a portion of the money which was taken from the victim. Also, the day after the robbery, on June 13, 2015, Rojas-Rojas saw Defendant and the other perpetrators at the Quiles Bakery where they told him about the robbery of El Rejón del Gallo and showed him (Rojas-Rojas) money and weapons.

As argued by the government, Rojas-Rojas' testimony described the planning stages of the robbery, including discussions among the co-conspirators and their actions leading up to the commission of the robbery. Also, Torres-Rojas willful joining the agreement with the others and the intent to participate in the robbery was corroborated by his confessions. This clearly shows the agreement and intent necessary to support a conspiracy conviction. As properly argued by the government, "[t]he totality of the circumstances, including the behaviors and actions of the defendant before, during, and after the robbery, strongly support the jury's verdict" that he conspired to interfere with commerce by robbery as charged in Count One. (Docket No. 336, p. 11).

Case 3:18-cr-00211-CVR   Document 337   Filed 10/29/24   Page 20 of 20

United States of America v. Jonathan Torres-Rojas [2]
Opinion and Order
Crim. No. 18-211 (CVR)
Page 20

## CONCLUSION

Based on the foregoing, Defendant Torres-Rojas' Rule 29 Motion for Judgment of Acquittal (Docket No. 332) is DENIED.

IT SO ORDERED.

In San Juan, Puerto Rico, this 29th day of October of 2024.

                                          s/ CAMILLE L. VELEZ-RIVE
                                          CAMILLE L. VELEZ-RIVE
                                          UNITED STATES DISTRICT JUDGE